McKinney, J.,
delivered the opinion of the Court.
This bill was filed • to enjoin the defendants from prosecuting an action of ejectment, brought by them against the complainant,■ Tipton, .who- claims under Fogg, for the recovery of a tract of land of one hundred and seventy-five acres, lying .in Dyer county, and- to have the legal title to said land divested out of the defendants, and vested in the complainant.
The Chancellor, on the hearing, dismissed the bill, and the cause is brought to this Coui't by an appeal.
The decision depends entirely upon the question of title.
The complainant, Fogg, as assignee, claims under an entry made by John Mclver, on the 2"0th of March, 1821, founded on certificate warrant, No. 3792, issued by the register of West Tennessee, for one hundred and seventy-five acres, entered --in the ofiice of -the thirteenth surveyor’s district; which entry was surveyed on the 1st of' January, 1831, and the -plat-and certificate of survey *478 were returned and recorded in said surveyor’s office, on the 12th of February, 1881. But no grant was ever issued on said entry.
The defendant, on the 1st day of September, 1851, made an entry of said land, in the entry-taker’s office of Dyer county, and procured a grant thereon on the 1st day of October, 1852, with constructive notice, and, as is necessarily to be inferred, Avith actual knowledge that the land had been previously appropriated by Mclver’s entry, in satisfaction of a valid North Carolina land claim.
The defendants insist, that by said entry and grant, they acquired a valid title; and the ground on which they rest their claim is, that by the failure of complainant to obtain a grant before the 1st day of September, 1851 — the time limited by the act of 1849-50 “ for making surveys and obtaining grants on all entries heretofore made in any of the land offices in this State ” — his entry became void, and the land was subject to entry as other vacant land. And of this opinion was the Chancellor. Upon a careful consideration of the principles involved in the case, we are led to a different conclusion.
It is obvious, that entries based upon valid North Carolina land claims, recognized and provided for by the Cession Act, stand on very different ground from entries deriving their entire efficacy from the acts of the General Assembly of Tennessee.
The right of the claimant to the land appropriated under a North Carolina land warrant, is not derived from Tennessee, but from North Carolina, under the provisions of the Cession Act. By solemn acts of legis *479 lation, prior to the Cession Act, North Carolina had constituted herself a trustee for the officers and soldiers of her continental army, for the quantity of land to which they were respectively entitled. Pinson v. Ivey, 1 Yer., 297, 360. By the provisions of the Cession Act, the lands ceded were to remain subject to the satisfaction of all bona fide claims, of every description, which had been derived before the cession from the laws of Korth Carolina. This trust was devolved upon Tennessee, and was solemnly recognized by her compact with North Carolina, ratified by th'e ant of 1804, ch. 14, and by the act of Congress of 1806, ch. 31, and other acts of Congress, up to the act of 1846, whereby the right and title of the United States, under the Cession Act, to all lands south and rvest of the Congressional Reservation Line, which then remained unappropriated, Avas surrendered to Tennessee; but upon the ’ express condition, that the lands thus released, 'and the proceeds thereof, AVere to remain subject to all the same claims, incumbrances, and liabilities, in relation to North Carolina land warrants, or other claims of North Carolina, as if the lands still remained in the hands of the United States.
It has been settled by repeated decisions of this Court, that the relation between the State of Tennessee and the oivners of North Carolina land warrants, or other claims, Avas that of trustee and cestui que trust. The State is regarded as having become bound to give the owner a complete legal title, vesting him with an estate in fee simple in the quantity of land to which he is entitled. The claimant is considered as having acquired an absolute vested right to the specific land *480 ajopropriated by his warrant; and the State, as trustee, cannot divest him of this right, either directly or indirectly. And this trust became so incorporated with the claim, and the land appropriated by it, as to affect all subsequent enterers of the same land — upon the familiar principle of equity, that where a purchaser has notice of the trust, though he pay a valuable consideration, he shall be subject to the trust. Pinson v. Ivey, 1 Yer., 309, 324, 359; 6 Yer., 190, 193.
The validity of these North Carolina land claims is emphatically recognized by the Constitution of Tennessee, art. 1, § 31. It is in substance declared, that the sovereignty and right of soil of Tennessee are subject to the conditions and provisions of the “ Cession Act,” and shall not “extend to affect the claim or claims of individuals to any part of the soil which is recognized to them by the aforesaid Cession Act.”
The right to the land appropriated by these “claims,” as before remarked, is derived, not from Tennessee, but from North Carolina. The former was merely invested with the naked power of issuing a grant to the bona fide claimant. And even the power to issue the grant is a delegated power, not emanating from her own independent sovereignty, but from the sovereignty of North Carolina. 5 Hay., 113, 117.
Independent of the exercise of any power or authority in Tennessee, the owner of the land appropriated under a North Carolina land warrant, may be regarded as invested with an estate in fee simple, merely by force of the Cession Act, and the acts of Congress, and of the General Assembly of Tennessee, passed' in pursuance thereof.
*481 If these principles he correct, it follows that the Legislature does not possess the power to annex a subsequent condition, by which the failure of the claimant to apply for a grant, within a limited period, shall work a forfeiture of his estate.
Tennessee voluntarily took upon herself the positive, active obligation to perfect the titles, by the issuance of grants upon all bona fide claims originating under the provisions of the Cession Act. This duty could have been easily discharged, consistently with her own obligations and the rights .of' the .claimants, by causing the grants to be in fact issued, and, if thought proper, making the necessary expenses incident to their issuance a charge upon the lands of the respective owners. But clearly, the Legislature, by merely providing for the issuance of a grant, on the application .of the owner of the land within a limited time, could not, on the ground of his neglect to demand a grant within the time, destroy the fight vested in him by his entry.: 'This is a right which Tennessee did not give, and cquld not, in this manner, take away.
This point is, perhaps, now directly decided for the first time in this State. It might have been raised upon the facts of the case of Sampson v. Taylor, 1 Sneed, 600; but neither in that case, nor in any other known to us, was the question presented for determination.
We do not deem it proper, at present, to discuss the question as to the power of the Legislature to annex subsequent conditions and limitations in regard to the time within which the enterers of land, deriving their rig'ht from the exclusive sovereignty and right of soil in Tennessee, shall perfect their titles. The question, in *482 this aspect, is not before us, and we intimate no opinion upon it.
We likewise pass by the position assumed for the complainants, that their entry being prior to the act of 1828, ch. 35, the case does not fall within the provision of the ninth section of that act — choosing, rather, to rest the determination of the case on the more general ground before stated.
The result is, that the defendants must be regarded as holding the legal title, acquired by their grant, in trust for the complainants; and it will be so decreed.
Decree reversed.